IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

KANDISE LUCAS,

      Plaintiff,

v.                                                                Civil Action No. 3:11cv5

HENRICO COUNTY SCHOOL BOARD, et al.,

      Defendants.

## REPORT AND RECOMMENDATION

    This matter comes before the Court pursuant to 28 U.S.C. § 636(b)(1)(B) for a Report and

Recommendation on Defendants' Amended Rule 12(b)(1) Motion to Dismiss and Amended Rule

12(b)(6) Motion to Dismiss. (Docket Nos. 7, 9.) These motions have been fully briefed, and on

August 18, 2011, the Court heard oral argument. This matter is now ripe for disposition. For the

reasons that follow, the undersigned Magistrate Judge RECOMMENDS that Defendants'

motions to dismiss be GRANTED IN PART and DENIED IN PART.

### I.  Factual and Procedural Background[1]

#### A.    Lucas's Employment with Henrico County Public Schools

    On January 4, 2011, Lucas, formerly employed by Henrico County Public Schools, filed a

Complaint in this Court against Defendants Henrico County School Board, Patrick Russo,

Andrew Armstrong, Philip Jepson, Marilyn Royal, Fred S. Morton, and John Rokenbrod.[2]

---

[1] The facts recited here are viewed in the light most favorable to Lucas and are derived from the Complaint and documents referenced in or integral to and explicitly relied on in the Complaint. Reliance on these sources is appropriate when considering a motion to dismiss. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004); *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000).

[2] Russo serves as the superintendent of Henrico County Public Schools, Armstrong serves as Principal of John Rolfe Middle School, and Jepson serves as Director of Human

Starting in August 2005, Lucas worked at John Rolfe Middle School as a special education teacher, case manager, and new teacher mentor. (Compl. ¶ 16.) Lucas alleges that Kim Arcell Taylor, a fellow teacher at John Rolfe Middle School, physically and verbally abused students with special needs, made sexually inappropriate remarks to female staff, and touched female staff in a sexually inappropriate manner. (Compl. ¶ 22.) For two years, Lucas, along with other staff and parents, "reported [Taylor's] abusive and neglectful actions" to Armstrong, Royal, Jepson, and Morton, as well as to members of the Henrico County School Board. (Compl. ¶ 22.) Defendants disregarded her reports and "repeatedly instructed [her] to refrain from documenting and reporting" Taylor's abuse. (Compl. ¶ 22.) Defendants did not take action against Taylor until April 2008, when he reportedly came to work under the influence of alcohol. (Compl. ¶ 22.) Lucas claims that Taylor received preferential treatment due to his personal connections with Royal, that school officials allowed Taylor to resign prior to taking disciplinary action against him, and that Defendants failed to report Taylor's abuse to the appropriate administrative agencies. (Compl. ¶ 22.)

"Throughout her tenure at Henrico County Public Schools, Lucas also documented and reported numerous special education violations and systematic discriminatory practices as they relate to African-American students with special needs, specifically males, and economically disadvantaged students within John Rolfe Middle School." (Compl. ¶ 23.) Starting in November 2007, Armstrong, Royal, Jepson, and Morton repeatedly instructed Lucas to refrain

---

Resources for Henrico County Public Schools. (Compl. ¶¶ 7-9.) Royal formerly served as Director of Middle Schools for Henrico County Public Schools, Morton formerly served as Superintendent of Henrico County Public Schools, and Rokenbrod formerly served as Assistant Principal at John Rolfe Middle School. (Compl. ¶¶ 10-12.) Lucas sues all these Defendants in their individual and official capacities. (Compl. ¶¶ 7-12.)

from documenting and reporting "incidents of abuse, neglect, and discrimination by district employees toward students within John Rolfe Middle School." (Compl. ¶ 20.) Armstrong instructed Lucas to report any such incidents verbally and prohibited her from documenting the incidents via e-mail. (Compl. ¶ 20.)

Lucas "received numerous written and verbal threats" in response to her reporting activities. (Compl. ¶ 24.) In October 2007, Rokenbrod sent an email to John Rolfe Middle School administrators referencing Lucas and advising the administrators to "'do whatever needs to be done in order to get rid of her so that [they] are not stuck with her next year.'" (Compl. ¶ 26.) In November 2007, two individuals placed messages in her school mailbox stating, "'YOUR FIRED MS. LUCAS.'" (Compl. ¶ 25.) Lucas reported the incident to school board members and to Morton, Royal, and Jepson, but no investigation resulted. (Compl. ¶ 25.) Lucas contends on information and belief that the messages were left "at the direction of Henrico's administration in an effort to intimidate Lucas into resigning." (Compl. ¶ 25.) In April 2008, Morton sent Lucas a threatening letter "to discourage Lucas from testifying before the Office of Civil Rights" regarding a complaint against the district. (Compl. ¶ 24.)

In February 2008, Morton transferred Lucas from John Rolfe Middle School to Elko Middle School, demoting her to serve as an assistant to two science instructors. (Compl. ¶ 16.) Armstrong and Jepson informed Lucas of the transfer, advising her it was the result of her unprofessional conduct. (Compl. ¶ 16.) Lucas contends the transfer violated the district's disciplinary guidelines and occurred within the same week she received a superior written evaluation. (Compl. ¶ 16.)

Despite the transfer, Lucas continued to report "suspected and actual incidents of abuse and neglect, as well as discriminatory practices as they relate to students with disabilities, specifically students of color and those that were economically disadvantaged at John Rolfe Middle School." (Compl. ¶ 27.)  In response to her continued reporting activities, Morton advised her in February 2008 that he would be recommending the non-renewal of her teaching contract. (Compl. ¶ 27.)  Lucas challenged this recommendation through the district's grievance process, and in April 2008, Morton agreed to withdraw his recommendation. (Compl. ¶ 27.)

Thereafter she continued her reporting activities and, in May 2008, Morton "had a letter hand-delivered to Lucas while she was at Elko Middle School in which he issued a directive that stated, 'you are not permitted to write or send any emails without my permission during school hours.'" (Compl. ¶ 28.)  In response, Lucas sent Morton an e-mail requesting clarification and the legal grounds for his directive. (Compl. ¶ 29.)  Morton responded with another hand-delivered letter "advising Lucas that should she email him again without seeking permission first, during work hours, she would face disciplinary action, which would include the possibility of termination." (Compl. ¶ 29.)  Lucas again e-mailed Morton, requesting clarification and the legal grounds for his directive. (Compl. ¶ 29.)

On May 5, 2008, Morton suspended Lucas for sixty days with pay and advised Lucas that he would be recommending her for contract non-renewal because she neglected her duties, engaged in insubordinate conduct, posed a threat to her students, and interfered with the daily operations of the school district. (Compl. ¶ 30.)  On May 30, 2008, the school board held a public hearing and upheld Morton's "recommendation for contract nonrenewal based on the grounds of insubordination, posing a threat to students, and interfering with the daily operations

4

of the school district, as well as preventing [Morton] from carrying out his daily job duties."
(Compl. ¶ 31.) Lucas alleges that the school board upheld Morton's recommendation to retaliate
against Lucas for her reporting activities. (Compl. ¶ 31.) On June 30, 2008, Lucas's
employment with Henrico County Public Schools terminated. (Compl. ¶ 3.)

### B.   Lucas's Charge of Discrimination filed with the Equal Employment Opportunity Commission ("EEOC")

In May 2008, Lucas "filed a formal complaint claiming retaliation, intimidation, and
discrimination with the Equal Employment Opportunity Commission." (Compl. ¶ 32.) The
Charge of Discrimination referenced in Lucas's Complaint alleged retaliation and discrimination
based on race. (Def.'s Mem. Supp. Am. Rule 12(b)(1) Mot. Dismiss Ex. 1.) Lucas listed the
earliest date on which discrimination took place as August 15, 2007 and the latest date on which
discrimination took place as May 5, 2008. *Id.* Lucas stated in the Charge of Discrimination, "I
believe I received written reprimands, transferred to another school, recommended for contract
non-renewal, suspended, and recommended for discharge because of my race, Black, in violation
of Title VII[3] of the Civil Rights Act of 1964 . . . ." *Id.* She also stated that "[f]rom August 2007
through February 2008, I voiced my concerns about the treatment of my students who are
predominately Black . . . . I believe I was retaliated against for voicing my concerns . . . in
violation of Section 704a of Title VII of the Civil Rights Act . . . ." *Id.* On October 12, 2010,
Lucas received a "right to sue" letter from the EEOC. (Compl. ¶ 36.)

---

[3] 42 U.S.C. § 2000e *et seq.*

C. **Summary of Claims Asserted in Lucas's Complaint**

Lucas asserts ten counts against Defendants.  The Court restates Lucas's claims as

follows:

Count 1:      Henrico County Public Schools, led by Morton, conspired to retaliate against Lucas for reporting the abuse and neglect towards students and families with special needs, in violation of Section 504 of the Rehabilitation Act of 1973[4] and Title V of the Americans with Disabilities Act of 1990 ("ADA");[5]

---

[4] Section 504 of the Rehabilitation Act provides in relevant part: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).  The Rehabilitation Act incorporates the anti-retaliation provision in Title VI of the Civil Rights Act, 42 U.S.C. § 2000d *et seq.  See* 29 U.S.C. § 794a(a)(2); 34 C.F.R. § 100.7(e).

[5] 42 U.S.C. § 12201 *et seq.*  Title V of the ADA contains a provision prohibiting retaliation and coercion:

(a) Retaliation

No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

(b) Interference, coercion, or intimidation

It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

*Id.* § 12203.  Lucas bases her retaliation claim on alleged acts and practices made unlawful by Title II of the ADA. (*See* Compl. at 24.)  Title II provides in relevant part: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.* § 12132.

6

Count 2:     Morton and two school board members violated Lucas's right to privacy and
             confidentiality by sharing information about her employment status with
             unauthorized persons, in violation of 42 U.S.C. § 1983;[6]

Count 3:     Defendants engaged in the unconstitutional prior restraint of protected speech, in
             violation of 42 U.S.C. § 1983;

Count 4(a):[7]  Defendants failed to prevent and conspired to promote a retaliatory, hostile, and
             sexually harassing work environment;

Count 4(b):  Defendants failed to protect and conspired to retaliate and discriminate against
             children and families with disabilities, as well as those who act on their behalf;

Count 5:     Defendants caused Lucas severe emotional distress by conspiring to commit
             outrageous acts in discrimination and retaliation against Lucas;

Count 6:     Defendants conspired to injure Lucas through their intentional and reckless
             disregard of the neglect, abuse, retaliation, and discrimination against Lucas and
             the students, families, and staff of John Rolfe Middle School;

Count 7:     Defendants engaged in outrageous conduct calculated to ensure no one would
             report instances of abuse, neglect, or sexual harassment within Henrico County
             Public Schools;

Count 8:     Defendants negligently inflicted emotional distress upon Lucas; and,

Count 9:     Defendants engaged in abuse of process by misusing the school's grievance
             process, taxpayers' monies, and the legal process.

---

[6] 42 U.S.C. § 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or
usage, of any State or Territory or the District of Columbia, subjects, or causes to be
subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities
secured by the Constitution and laws, shall be liable to the party injured in an action
at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

[7] Lucas's Complaint mistakenly labels two causes of action as "Count Four."  For the
purpose of clarity, the Court has labeled these two causes of action as "Count 4(a)" and "Count
4(b)."

7

Defendants have filed motions to dismiss,[8] raising various grounds for the dismissal of Lucas's claims. Defendants first contend that Counts 1, 4(a), and 4(b) should be dismissed for lack of subject matter jurisdiction due to Lucas's failure to exhaust her administrative remedies.[9] (Defs.' Am. Rule 12(b)(1) Mot. Dismiss 1.) Defendants also argue that Lucas lacks standing to litigate several of her claims. (Defs.' Mem. Supp. Am. Rule 12(b)(6) Mot. Dismiss 6-8.) Next, Defendants contend that Count 3 and Counts 5 through 9 are barred by the applicable statutes of limitations. (Defs.' Am. Rule 12(b)(6) Mot. Dismiss 1.) Finally, Defendants contend that some counts fail to state a claim upon which relief can be granted and assert an entitlement to qualified immunity as to Count 2. (Defs.' Am. Rule 12(b)(6) Mot. Dismiss 1.) The Court addresses these arguments in turn.

## II.  Standard of Review

### A.    Rule 12(b)(1):  Lack of Subject Matter Jurisdiction

In a motion to dismiss under Fed. R. Civ. P. 12(b)(1) challenging the Court's subject matter jurisdiction, the burden rests with the plaintiff, the party asserting jurisdiction, to prove that federal jurisdiction is proper. *See Int'l Longshoremen's Ass'n v. Va. Int'l Terminals, Inc.*,

---

[8] Defendants' motions to dismiss included proper *Roseboro* notices. *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

[9] Defendants also move to dismiss Count 3 for lack of subject matter jurisdiction due to Lucas's failure to exhaust her administrative remedies. (Defs.' Am. Rule 12(b)(1) Mot. Dismiss 1.) The Court, however, construes Count 3 to allege a § 1983 claim for the unconstitutional prior restraint of protected speech. Based on this construction, Defendants conceded at oral argument that Count 3 does not require exhaustion. The Court thus RECOMMENDS that Defendants' Amended Rule 12(b)(1) Motion to Dismiss be DENIED AS MOOT to the extent Defendants seek dismissal of Count 3 based on lack of subject matter jurisdiction.

914 F. Supp. 1335, 1338 (E.D. Va. 1996) (*citing McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) can attack subject matter jurisdiction in two ways. First, a 12(b)(1) motion may attack the complaint on its face, asserting that the complaint fails to state a claim upon which subject matter jurisdiction can lie. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams,* 697 F.2d at 1219. In such a challenge, a court assumes the truth of the facts alleged by plaintiff, thereby functionally affording the plaintiff the same procedural protection he or she would receive under Rule 12(b)(6) consideration. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams,* 697 F.2d at 1219.

However, a 12(b)(1) motion may also, as here, challenge the existence of subject matter jurisdiction in fact, apart from the pleadings. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219. In such a challenge, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.

If the facts necessary to determine jurisdiction are intertwined with the facts central to the merits of the dispute, the proper course of action is for the court to find that jurisdiction exists and then to resolve the factual dispute on the merits unless the claim is made solely for the purpose of obtaining jurisdiction, or is determined to be wholly insubstantial and frivolous.

*Adams*, 697 F.2d at 1219; *United States v. North Carolina*, 180 F.3d 574, 580 (4th Cir. 1999); *Bell v. Hood*, 327 U.S. 678, 682-83 (1946).

### B.    Rule 12(b)(6):  Failure to State a Claim

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (*citing* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952.  This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp.*, 550 U.S. at 555 (citations omitted).  Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at

10

570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (*citing Bell Atl. Corp.*, 550 U.S. at

556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a

claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim."

*Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (*citing Dickson v.

Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281

(4th Cir. 2002)).

"Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency

of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal

nevertheless is appropriate when the face of the complaint clearly reveals the existence of a

meritorious affirmative defense." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir.

1996). Thus, a Rule 12(b)(6) motion may seek dismissal based on an applicable statute of

limitations in certain circumstances.

### III.  Analysis

**A.      Subject Matter Jurisdiction**

The Court must first consider whether it may exercise subject matter jurisdiction over

Counts 1, 4(a), and 4(b).  In Count 1, Lucas contends that Defendants retaliated against her after

she voiced concerns about their treatment of children and families with disabilities, in violation

of Section 504 of the Rehabilitation Act[10] and Title V of the ADA.  (Compl. ¶ 38.)  In Count

---

[10] During oral argument, Defendants asserted that Lucas's Complaint fails to allege any
claim under the Rehabilitation Act.  Defendants contend that her Complaint repeatedly references
§ 1983 and the ADA (*see* Compl. ¶¶ 1-3, 36, 43), but contains only one stray reference to the
Rehabilitation Act and even that reference includes a typographical error (*see* Compl. at 24).

4(a), Lucas alleges that Defendants failed to prevent and conspired to promote a hostile and sexually harassing work environment by employing Taylor and continuing his employment despite reports of his sexual harassment. (Compl. ¶ 45.) Further, Lucas claims Defendants retaliated against those who reported Taylor's sexual harassment. (Compl. ¶ 45.) The Court construes Count 4(a) to assert Title VII violations. In Count 4(b), Lucas asserts that Defendants discriminated and retaliated against children and families with disabilities, as well as those who act on their behalf. (Compl. ¶ 47.) The Court construes Count 4(b) to assert a violation of Section 504 of the Rehabilitation Act and Titles II and V of the ADA.

Defendants argue that Lucas failed to allege discrimination and/or retaliation based on sex or disability in her EEOC charge and thus did not properly present her claims to the EEOC. This failure to exhaust administrative remedies, Defendants contend, deprives the Court of

---

The Court, however, must liberally construe a *pro se* complaint. *See Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). The heading under Count 1 clearly attempts to cite to the section of the Rehabilitation Act that incorporates Title VI's anti-retaliation provision and states, "Violation of 29 U.S.C. 794a(2) The Anti-Retaliation Provision of Title VI of the Civil Rights Act . . . ." (Compl. at 24.) The Court thus construes Lucas's Complaint to invoke the Rehabilitation Act under 29 U.S.C. 694a(a)(2).

In response to the Court's inquiry during oral argument, Defendants asked this Court to dismiss any claim it construed as brought under the Rehabilitation Act as barred by an applicable one-year statute of limitations. While it appears this argument might hold weight, *see Perry v. Computer Sciences Corp.*, No. 1:10cv175, 2010 WL 3784900, at *5 (E.D. Va. Sept. 21, 2010), *aff'd*, No. 10-2195, 2011 WL 1750293 (4th Cir. May 9, 2011), the Court declines to address this basis for a motion to dismiss because it first arose during oral argument, because Lucas has not had a full and fair opportunity to respond, and because the Court lacks the benefit of full briefing on the subject. *See N.C. Alliance for Transp. Reform, Inc. v. U.S. Dep't of Transp.*, 713 F. Supp. 2d 491, 510 (M.D.N.C. 2010) ("Raising such new arguments for the first time at oral argument undermines the purpose of orderly briefing and risks subjecting an opponent to an unfair disadvantage."). This approach serves the interests of justice given the ample opportunity Defendants may have to pursue this argument in the future.

subject matter jurisdiction over Counts 1, 4(a), and 4(b).  Defendants also assert that Lucas does not have standing to raise claims for discrimination based on disability.

### 1.    The Court Lacks Jurisdiction Over Lucas's Title VII Claims in Count 4(a) Due to Her Failure to Exhaust Administrative Remedies

"Before filing suit under Title VII, a plaintiff must exhaust [his or] her administrative remedies by bringing a charge with the EEOC." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000).  If the plaintiff has failed to exhaust administrative remedies concerning a Title VII claim, the court is deprived of subject matter jurisdiction over the claim.  *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009).  The purpose behind the exhaustion requirement is to ensure that the employer is put on notice of the alleged violations in hopes that the matter can be resolved out of court if possible.  *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005).

The EEOC charge, which "must be in writing and verified under oath or affirmation under penalty of perjury," defines the scope of the plaintiff's right to sue.  *Jones*, 551 F.3d at 300.  "If a plaintiff's claims in [his or] her judicial complaint are reasonably related to [his or] her EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in [his or] her subsequent civil suit."  *Smith*, 202 F.3d at 247.  "[T]he factual allegations made in formal litigation must correspond to those set forth in the administrative charge."  *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005).  "[I]f the factual foundation in the administrative charge is too vague to support a claim that is later presented in subsequent litigation, that claim will also be procedurally barred."  *Id.*  In addition, courts bar claims that allege discrimination on a different basis, of a different type, or of a

different scope than the plaintiff alleged in the administrative charge. *Id.* "At the same time, however, lawyers do not typically complete the administrative charges, and so courts construe them liberally." *Id.*

Here, the Court cannot find that Lucas exhausted her administrative remedies regarding Count 4(a), which alleges sexual harassment, a sexually hostile work environment, and retaliation for reporting the incidents of sexual harassment. First, these claims are not alleged in the Charge of Discrimination, which asserts discrimination and retaliation based solely on race, and, based on the record before the Court, cannot be deemed reasonably related to any allegations in the Charge of Discrimination. *See id.* ("A claim will also typically be barred if the administrative charge alleges one type of discrimination–such as discriminatory failure to promote–and the claim encompasses another type–such as discrimination in pay and benefits."); *Miles v. Goldschmidt Chem. Corp.*, No. 3:07CV444, 2007 WL 2973242, at *3 (E.D. Va. Oct. 9, 2007) (finding that the plaintiff failed to exhaust administrative remedies on a failure to promote claim because the charge of discrimination contained no mention of the failure to promote). Second, these claims cannot be expected to follow from a reasonable administrative investigation of the Charge of Discrimination. *See Nicol v. Imagematrix, Inc.*, 767 F. Supp 744, 753 (E.D. Va. 1991) (finding that an administrative investigation of sexual harassment and sexually hostile work environment could not reasonably follow in light of the plaintiff's charge of sex discrimination based on pregnancy).

Because Lucas failed to exhaust her administrative remedies, the Court lacks subject

matter jurisdiction over her Title VII claims raised in Count 4(a).[11]  The Court thus

RECOMMENDS that Defendants' Amended Rule 12(b)(1) Motion to Dismiss be GRANTED to

the extent it seeks dismissal of Count 4(a).

2.    **Exhaustion of Administrative Remedies Is Not Required for Lucas's Claims Under the Rehabilitation Act or the ADA**

In Counts 1 and 4(b), Lucas asserts violations of Section 504 of the Rehabilitation Act

and Titles II and V of the ADA.  While Defendants argue that Lucas must exhaust her

administrative remedies before the Court may exercise subject matter jurisdiction over these

claims, they provide sparse authority to support their argument.[12]  Indeed, the weight of authority

holds otherwise.

The Rehabilitation Act provides that "[t]he remedies, procedures, and rights set forth in

title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d *et seq.*) . . . shall be available to any

person aggrieved by any act or failure to act by any recipient of Federal assistance" under Section

504.  29 U.S.C. § 794a(a)(2).  "'The administrative enforcement process, established by

---

[11] During oral argument, Lucas cited to two cases from the Supreme Court of the United States, *Patsy v. Board of Regents of State of Florida*, 457 U.S. 496 (1982); *Cannon v. University of Chicago*, 441 U.S. 677 (1979), to support her argument that an exception to the exhaustion requirement should apply in her case.  The Court has reviewed these cases and disagrees that they provide an exception to the exhaustion requirement as applied to her Title VII claims.

[12] Defendants' Amended Rule 12(b)(1) Motion to Dismiss cites two cases to support their proposition.  (Defs.' Mem. Supp. Am. Rule 12(b)(1) Mot. Dismiss 2-3.)  One case from the Eastern District of Virginia discusses the exhaustion of administrative remedies requirement in the Title VII context.  The second case, from the Southern District of New York, discusses the exhaustion requirement under the ADA.  Because Defendants did not construe Lucas's Complaint to invoke the Rehabilitation Act, Defendants' brief did not cite any authority construing the Rehabilitation Act.

Congress as a part of Title VI, centers entirely on the question of whether, in light of the policies and practices of a recipient of federal assistance, federal funds should continue to flow to that recipient.'" *Davis v. Buckley*, 526 F. Supp. 985, 989-90 (E.D. Va. 1981) (*quoting Camenisch v. Univ. of Tex.*, 616 F.2d 127, 135 (5th Cir. 1980), *vacated on other grounds*, 451 U.S. 390 (1981)). Unlike in Title VII, "'[t]here is no specific vindication of personal rights within the [Title VI] administrative procedure for complaining parties.'" *Id.* at 990 (*quoting Camenisch*, 616 F.2d at 135). Based on this, Courts have uniformly held that non-federal employees[13] need not exhaust administrative remedies before bringing a private action under Section 504 of the Rehabilitation Act.[14] *See, e.g., Freed v. Consol. Rail Corp.*, 201 F.3d 188, 193 (3d Cir. 2000);

---

[13] Section 501 of the Rehabilitation Act creates a separate remedy for federal employees. 29 U.S.C. § 791. Because "[t]he remedies, procedures, and rights . . . [of Title VII] of the Civil Rights Act of 1964 . . . shall be available, with respect to any complaint" brought under Section 501, *id.* § 794a(a)(1), the Title VII exhaustion requirement applies to federal employees bringing claims under the Rehabilitation Act. *Wilkinson v. Rumsfeld*, 100 F. App'x 155, 157 (4th Cir. 2004); *Freed v. Consol. Rail Corp.*, 201 F.3d 188, 191 (3d Cir. 2000); *Tuck v. HCA Health Servs. of Tenn., Inc.*, 7 F.3d 465, 471 (6th Cir. 1993).

[14] Although the United States Court of Appeals for the Fourth Circuit has yet to issue a published opinion on this matter, the Court found at least one unpublished opinion by the Fourth Circuit that does not diverge from this proposition. *Spencer v. Ashcroft*, 147 F. App'x 373, 375 (4th Cir. 2005). In *Spencer*, the Fourth Circuit found that the federal employee plaintiff was required to exhaust her administrative remedies before instituting a lawsuit under the Rehabilitation Act. *Id.* The Fourth Circuit reasoned:

> The Rehabilitation Act expressly incorporates the standards of the [ADA]. § 794(d). The ADA, in turn, follows the 'powers, remedies and procedures' set forth in Title VII of the Civil Rights Act of 1964, as amended. *See* 42 U.S.C. § 12117(a) (2000). Thus, like a Title VII plaintiff, [the plaintiff] was required to exhaust her administrative remedies before instituting a lawsuit.

*Id.* at 374-75. As discussed above, the Title VII exhaustion requirement applies to federal employees bringing claims under the Rehabilitation Act. *See supra* note 13.

The Court further notes that while the Rehabilitation Act instructs courts to look to the ADA to determine whether a *violation* of Section 504 has occurred, it directs courts to look to Title VI of the Civil Rights Act to determine the remedies, procedures, and rights that apply to Section 504 claims. 29 U.S.C. §§ 794(d), 794a(a)(2).

*Brennan v. King*, 139 F.3d 258, 268 n.12 (1st Cir. 1998); *Tuck v. HCA Health Servs. of Tenn., Inc.*, 7 F.3d 465, 470-71 (6th Cir. 1993); *Smith v. Barton*, 914 F.2d 1330, 1338 (9th Cir. 1990); *Miener v. Missouri*, 673 F.2d 969, 978 (8th Cir. 1982); *Pushkin v. Regents of Univ. of Colo.*, 658 F.2d 1372, 1381-82 (10th Cir. 1981); *Lloyd v. Reg'l Transp. Auth.*, 548 F.2d 1277, 1287 (7th Cir. 1977); *Davis*, 526 F. Supp. at 990; *Thompson v. Va. Dep't of Game & Inland Fisheries*, No. 1:05cv109, 2006 WL 1310363, at *4 (W.D. Va. May 14, 2006); *Grubbs v. Med. Facilities of Am., Inc.*, No. 94-0009-D, 1994 WL 791708, at *1-2 (W.D. Va. Sept. 23, 1994); *cf. Cannon*, 441 U.S. at 706-08 n.41 (concluding that exhaustion of administrative remedies was not a prerequisite to the bringing of a private suit under Title IX of the Education Amendments of 1972, which adopts the Title VI enforcement procedures).

Title II of the ADA likewise does not require exhaustion prior to bringing suit. Title II's implementing regulations state: "At any time, the complainant may file a private suit . . . whether or not the designated agency finds a violation." 28 C.F.R. § 35.172(d). The preamble to the regulations explains that "[b]ecause the Act does not require exhaustion of administrative remedies, the complainant may elect to proceed with a private suit at any time." 28 C.F.R. § 35.172, App. A. Thus, Lucas need not exhaust administrative remedies prior to filing suit on claims involving public services arising under Title II of the ADA. *See, e.g.*, *Thorne v. Hale*, No. 1:08cv601, 2009 WL 890136, at *5 (E.D. Va. Mar. 26, 2009) (*citing Lewis v. Aetna Life Ins. Co.*, 993 F. Supp. 382, 387 (E.D. Va. 1998), *overruled on other grounds by Lewis v. Kmart Corp.*, 180 F.3d 166, 168 n.2 (4th Cir. 1999)); *Sarkissian v. W. Va. Univ. Bd. of Governors*, No. 1:05cv144, 2007 WL 1308978, at *5 (N.D. W. Va. May 3, 2007); *Thompson*, 2006 WL 1310363, at *4. Because Lucas bases her retaliation claim under Title V of the ADA on alleged

17

acts and practices made unlawful by Title II, she need not exhaust administrative remedies on her ADA retaliation claim either.[15] *Sarkissian*, 2007 WL 1308978, at *8.

Because the applicable federal statutes do not require exhaustion of administrative remedies prior to filing suit, the Court RECOMMENDS that Defendants' Amended Rule 12(b)(1) Motion to Dismiss be DENIED to the extent it seeks dismissal of Counts 1 and 4(b) based on failure to exhaust administrative remedies.

### 3. Lucas Does Not Have Standing to Raise Discrimination Based on Disability Under the Rehabilitation Act or the ADA

Lucas asserts in Count 4(b) that Defendants discriminated and retaliated against children and families with disabilities, as well as those who act on their behalf. (Compl. ¶ 47.) Defendants contend that Lucas does not have standing to litigate these claims on behalf of students with disabilities or their families.

The doctrine of standing derives from Article III of the Constitution, which requires that courts limit their jurisdiction to actual cases and controversies. In determining whether a plaintiff has standing, courts look to whether a plaintiff is the proper party to initiate suit. *Raines v. Byrd*, 521 U.S. 811, 818 (1997). To be a proper party under Article III, the plaintiff must have a

---

[15] Defendants cite a case from the Southern District of New York for the proposition that ADA retaliation claims require exhaustion of administrative remedies. (Def.'s Mem. Supp. Am. Rule 12(b)(1) Mot. Dismiss 3 (*citing Sussle v. Sirina Prot. Sys. Corp.*, 269 F. Supp. 2d 285 (S.D.N.Y. 2003).) The *Sussle* court found that the plaintiff's ADA retaliation claim must be dismissed for failure to exhaust administrative remedies. *Sussle*, 269 F. Supp. 2d at 314. The Court, however, finds this case factually distinguishable because the plaintiff in *Sussle* premised his retaliation claim on a violation of Title I of the ADA. *Id.* at 295, 315. Title I of the ADA adopts "[t]he powers, remedies, and procedures set forth in" Title VII of the Civil Rights Act. 42 U.S.C. § 12117(a). Courts have thus held that claims brought under Title I of the ADA, or retaliation claims premised on a violation of Title I of the ADA, must be properly exhausted. *See, e.g., Thorne*, 2009 WL 890136, at *5. Because Lucas bases her retaliation claim on a violation of Title II of the ADA, the *Sussle* case is inapposite.

"personal stake" in the litigation. *Rhodes v. E.I du Pont de Nemours & Co.*, 636 F.3d 88, 99 (4th Cir. 2011). To establish standing, Lucas must demonstrate: (1) an injury-in-fact that is concrete and particularized; (2) the injury was caused by the conduct complained of; and, (3) such injury is likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Because Lucas does not contend that she has personally been discriminated or retaliated against due to a disability, she cannot demonstrate standing and is not a proper party to raise such claims.

Lucas does not allege third-party standing on behalf of the disabled students or their families, but even if she had, she would not qualify for third-party standing. "The doctrine of third-party standing permits a plaintiff to bring suit on behalf of a third party *for injury done to the third party* in certain circumstances when the third party cannot effectively protect its own interests." *A Helping Hand v. Baltimore Cnty.*, 515 F.3d 356, 363 n.3 (4th Cir. 2008). To establish third-party standing, the plaintiff must demonstrate: "(1) an injury-in-fact; (2) a close relationship between herself and the person whose right she seeks to assert; and (3) a hindrance to the third party's ability to protect his or her own interests." *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 215 (4th Cir. 2002). "The Fourth Circuit has further clarified that the hurdle preventing a third party from asserting [his or] her own rights must be high indeed, as the mere fact that a person is disabled, chronically ill, or indigent does not constitute an obstacle sufficient to" demonstrate the third element. *Equal Rights Ctr. v. Abercrombie & Fitch Co.*, 767 F. Supp. 2d 510, 523 (D. Md. 2010) (*citing Freilich*, 313 F.3d at 215). Even assuming the first two elements can be shown, Lucas has failed to allege or demonstrate the third element, and thus,

does not have third-party standing to bring a claim on behalf of disabled students or families for discrimination or retaliation based on disability.

It is thus RECOMMENDED that Count 4(b) be DISMISSED for lack of standing to the extent it alleges discrimination and retaliation against children and families with disabilities. To the extent Lucas alleges in Count 4(b) that she personally was retaliated against for reporting abuse, neglect, and discrimination of students with disabilities, it is RECOMMENDED that it be DISMISSED as duplicative of Count 1.

**B.**     **Statutes of Limitations and Failure to State a Claim**

Defendants next contend that Count 3 and Counts 5 through 9 are barred by Virginia's two-year statute of limitations applicable to personal injury actions. Defendants also contend that Counts 5 through 8 fail to state a claim upon which relief may be granted.

**1.**     **Count 3: § 1983 Claim for Unconstitutional Prior Restraint on Protected Speech**

In Count 3, Lucas asserts a § 1983 claim, contending that "Defendants' prohibition to Lucas, a mandated reporter, from complying with district, state, and federal laws, writing and sending emails documenting the abuse, neglect, and discrimination of students with disabilities . . . , and the unlawful non-renewal of her teaching contract, constituted an unconstitutional prior restraint" which resulted in "an unconstitutional deprivation of [her] rights under the First and Fourteenth Amendments to the U.S. Constitution." (Compl. ¶ 42.)

Because § 1983 does not explicitly provide its own statute of limitations, the courts borrow the personal injury statute of limitations from the relevant state. *See Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995); *Demuren v. Old Dominion Univ.*, 33 F.

20

Supp. 2d 469, 476 (E.D. Va. 1999). Virginia applies a two-year statute of limitations to personal injury claims. Va. Code § 8.01-243(A) ("[E]very action for personal injuries, whatever the theory of recovery, . . . shall be brought within two years after the cause of action accrues."). Lucas thus must have brought her § 1983 claim within two years from when the claim accrued. "'A claim accrues when the plaintiff becomes aware of his or her injury, *United States v. Kubrick*, 444 U.S. 111, 123 (1979), or when he or she 'is put on notice . . . to make reasonable inquiry' as to whether a claim exists." *Almond v. Sisk*, No. 3:08cv138, 2009 WL 2424084, at *4 (E.D. Va. Aug. 6, 2009) (*quoting Nasim*, 64 F.3d at 955) (omission in original).

Lucas's § 1983 claim accrued at the latest on June 30, 2008 when her employment with Henrico County Public Schools terminated. (*See* Compl. ¶ 3.) Because Lucas did not file her Complaint until January 4, 2011, more than two years after her claim accrued, the statute of limitations bars this claim. Accordingly, the Court RECOMMENDS the dismissal of Count 3 as barred by the statute of limitations.[16]

## 2.    Counts 5 through 7:  Intentional Infliction of Emotional Distress

In Counts 5 through 7, it appears that Lucas recites the elements for a claim of intentional infliction of emotional distress. *See Harris v. Kreutzer*, 624 S.E.2d 24, 33 (Va. 2006) ("Th[e] tort [of intentional infliction of emotional distress] requires four elements to be proved: (1) the

---

[16] During oral argument, Lucas suggested that Defendants engaged in fraudulent activities by violating mandated reporting requirements. Lucas asserted that Defendants' fraud should toll the statute of limitations. Under Virginia law, "'[a] defendant must intend to conceal the discovery of the cause of action by trick or artifice and must have thus actually concealed it from the plaintiff in order'" to toll the statute of limitations. *Resolution Trust Corp. v. Walde*, 856 F. Supp. 281, 286 (E.D. Va. 1994) (*quoting FDIC v. Cocke*, 7 F.3d 396, 402 (4th Cir. 1993)). Here, Lucas does not allege that Defendants concealed their fraudulent activities in an attempt to prevent Lucas's discovery of her cause of action. She has thus failed to allege or demonstrate any grounds by which to toll the statute of limitations.

wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable; (3) there was a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress was severe."). Count 5, entitled "SEVERE EMOTIONAL DISTRESS," states that Defendants' outrageous conduct caused "emotional distress and physical injury and mental anguish, including but not limited to bodily injury such as stomach aches, headaches, anxiety, sleep loss, feelings of worthlessness, fear for her safety and that of her family, and increase in medication, feelings of depression anger and irritability and appetite loss." (Compl. ¶ 49.)

Count 6, entitled "INTENTIONAL AND RECKLESS DISREGARD," asserts that "Defendants conspired and acted with the specific intent to inflict physical, emotional, and mental injury." (Compl. ¶ 51.)

Finally, Count 7, entitled "OUTRAGEOUS CONDUCT," alleges that Defendants engaged in outrageous conduct "to make an example out of Lucas so as to ensure that no other educators would come forward to report abuse, neglect, misconduct, or safety violations as involving children with special needs, nor would they come forward to report instances of sexual harassment." (Compl. ¶ 53.) It appears that the outrageous conduct referred to in Count 7 consists of Defendants' instructions to Lucas to refrain from reporting incidents of abuse, the Defendants allowing abuse of students to continue, the written and verbal threats received at the direction of Defendants, and the disciplinary actions taken against Lucas eventually resulting in her contract non-renewal. (Compl. ¶¶ 16, 20, 24-25, 27, 30-31.)

a.   **Statute of Limitations**

Virginia's two-year statute of limitations for personal injury applies to a claim for intentional infliction of emotional distress. *Luddeke v. Amana Refrigeration, Inc.*, 387 S.E.2d 502, 504 (Va. 1990) (*citing* Va. Code § 8.01-243). "In general, the limitation period begins to run when the right of action accrues, which is 'the date the injury is sustained in the case of injury to the person . . . and not when the resulting damage is discovered.'" *Kopalchick v. Catholic Diocese of Richmond*, 645 S.E.2d 439, 440 (Va. 2007) (*quoting* Va. Code § 8.01-230) (omission in original).[17] "[A]n injury is deemed to occur, and the statute of limitations period begins to run, whenever any injury, however slight, is caused by the negligent act, even though additional or more severe injury or damage may be subsequently sustained as a result of the negligent act." *St. George v. Pariser*, 484 S.E.2d 888, 890 (Va. 1997).

Because Lucas filed her Complaint on January 4, 2011, the statute of limitations bars her claim for intentional infliction of emotional distress unless it accrued on or after January 4, 2009. Defendants argue that Lucas's action for intentional infliction of emotional distress accrued on June 30, 2008 when her employment with Henrico County Public Schools ended. (Defs.' Mem. Supp. Am. Rule 12(b)(6) Mot. Dismiss 4.) However, the injury complained of in Lucas's intentional infliction of emotional distress claim is not the loss of her job, but instead the emotional distress she suffered.

---

[17] During oral argument, Defendants argued that the accrual date should be calculated from the last act of Defendants which caused Lucas injury. Defendants did not cite any authority for this proposition in briefing or during oral argument, and § 8.01-230 of the Virginia Code states otherwise.

Although Lucas alleges she suffered various injuries as a result of Defendants' conduct, such as stomach aches, anxiety, stress, sleep loss, and headaches, the Complaint does not contain a time frame for these injuries. (*See* Compl. ¶¶ 49, 55, 64.) A liberal reading of this *pro se* Complaint does not necessitate that this Court find those ailments occurred before January 4, 2009. The only injury for which Lucas alleges a time frame is a January 2009 miscarriage which Lucas contends occurred "as a direct result of the enormous stress and anxiety created by several years of trauma at the hands of Henrico School officials." (Compl. ¶ 64.) Liberal pleading rules suggest, then, that Defendants have not met their burden of establishing that the statute of limitations bars Lucas's claim for intentional infliction of emotional distress. At this stage of the litigation, Defendants have failed to demonstrate the existence of a meritorious affirmative defense based solely on the face of the Complaint. *See Brooks*, 85 F.3d at 181.

### b.   Failure to State a Claim

Defendants next contend that Lucas's Complaint fails to state a claim for intentional infliction of emotional distress. Lucas's Complaint must sufficiently allege the following four elements to state a claim for intentional infliction of emotional distress: "(1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable; (3) there was a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress was severe." *Harris*, 624 S.E.2d at 33. Defendants contend that Lucas's Complaint fails to sufficiently allege the second element, outrageous and intolerable conduct. (Defs.' Mem. Supp. Am. Rule 12(b)(6) Mot. Dismiss 11.)

The Supreme Court of Virginia has stated that "the tort of intentional infliction of emotional distress is not favored in the law." *Supervalu, Inc. v. Johnson*, 666 S.E.2d 335, 370

24

(Va. 2008) (citations and internal quotation omitted).  Liability thus becomes proper "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Harris*, 624 S.E.2d at 33 (citation omitted).  Lucas's Complaint details repeated instructions to refrain from reporting incidents of abuse, written and verbal threats received from Defendants, and disciplinary actions received as a result of her refusal to refrain from her reporting activities.  Lucas also makes conclusory allegations that Defendants ignored reports of abuse and therefore allowed abuse of students to continue, but fails to sufficiently explain what conduct constituted the "abuse."  Lucas does not allege specific behavior or instances of abuse that rise to atrocious, intolerable, or outrageous conduct.

When viewed alongside other cases applying Virginia law on intentional infliction of emotional distress, Lucas's well-pleaded allegations insufficiently allege outrageous and intolerable conduct on behalf of Defendants.  *See, e.g., Hammond v. Morley*, No. 3:11cv53, 2011 WL 2681231, at *4 (E.D. Va. July 8, 2011) (finding that allegations "that [the plaintiff] was assaulted by officers who used excessive force against him and wrongfully arrested him" did not constitute the type of outrageous conduct necessary in a claim for intentional infliction of emotional distress); *White v. Ocean Duchess Inc.*, No. 2:07cv300, 2007 WL 4874709, at *5 (E.D. Va. Nov. 7, 2007) (finding that "allegations of racial slurs and termination based on race fall woefully short of meeting the requisite level of outrageous conduct necessary to state a claim for intentional infliction of emotional distress"); *Harris*, 624 S.E.2d at 32-33 (finding that a brain injured accident victim failed to sufficiently allege outrageous conduct by claiming that a doctor "'verbally abused [her], raised his voice to her, caused her to break down in tears . . . , stated she

was "putting on a show," and accused her of being a faker and malingerer'" during an

independent medical exam as part of her court action) (alteration in original).

Taking the well-pleaded allegations as true and viewing the Complaint in the light most

favorable to Lucas, *Mylan Labs., Inc.*, 7 F.3d at 1134, the Court finds that Lucas's Complaint

insufficiently states a claim for intentional infliction of emotional distress. Accordingly, the

Court RECOMMENDS that Defendants' Amended Rule 12(b)(6) Motion to Dismiss be

GRANTED to the extent it seeks dismissal of Counts 5 through 7.

### 3.    Count 8: Negligent Infliction of Emotional Distress

In Count 8, Lucas contends that Defendants' **"grossly negligent** conduct and willful

violation of a statutory claim" caused "emotional distress and physical injury and mental anguish,

including but not limited to bodily injury such as stomach ac[h]es, sleep loss, feelings of

worthlessness and increase in medication, feelings of depression anger and irritability and

appetite loss." (Compl. ¶ 55.) Count 8 appears to be based on the same conduct as alleged in

Counts 5-7.

Virginia's two-year statute of limitations for personal injuries applies to claims for

negligent infliction of emotional distress. For the same reasons discussed as to Counts 5 through

7 above, Defendants have not met their burden in demonstrating the existence of a meritorious

statute of limitations defense based solely on the face of the Complaint.

Defendants also contend that Lucas's Complaint fails to state a claim for negligent

infliction of emotional distress. In describing the tort of negligent infliction of emotional

distress, the Supreme Court of Virginia stated:

> "[T]here may be recovery for negligent conduct . . . provided the injured party properly pleads and proves by clear and convincing evidence that his [or her] physical injury was the natural result of fright or shock proximately caused by the defendant's negligence. In other words, there may be recovery in such a case if, but only if, there is shown a clear and unbroken chain of causal connection between the negligent act, the emotional disturbance, and the physical injury."

*Delk v. Columbia/HCA Healthcare Corp.*, 523 S.E.2d 826, 833-34 (Va. 2000) (*quoting Hughes v. Moore*, 197 S.E.2d 214, 219 (Va. 1973)).  Defendants argue that the Complaint "contains no factual allegations of negligence resulting in fright or shock." (Defs.' Mem. Supp. Am. Rule 12(b)(6) Mot. Dismiss 11.)

Lucas's Complaint alleges that Defendants demonstrated gross negligence in ignoring reports of abuse and discrimination against students with disabilities and that this negligence caused her emotional distress.  She also alleges that, as a result of Defendants' "negligence in failing to report the repeated abusive and negligent actions of Kim Arcell Taylor . . . , Lucas, her students, and others . . . were subjected to an extremely dangerous, aggressive, sexually aggressive, substance-abusing, and mentally unstable individual within the workplace on a daily basis." (Compl. ¶ 60.)  Due to the "enormous stress and anxiety created by several years of trauma at the hands of Henrico School officials," Lucas alleges she suffered a miscarriage. (Compl. ¶ 64.)

These allegations do not sufficiently allege a "clear and unbroken chain of causal connection" between a physical injury which "was the natural result of fright or shock proximately caused by [Defendants'] negligence." *Delk*, 523 S.E.2d at 834; *see also Sykes v. Bayer Pharm. Corp.*, 548 F. Supp. 2d 208, 217 (E.D. Va. 2008) ("In Virginia, a claim of negligent infliction of emotional distress cannot succeed if a party does not 'plead with specificity that [it] incurred a physical injury which was the natural result of fright or shock

27

proximately caused by the defendant['s] alleged negligence.'" (*quoting Delk*, 523 S.E.2d at 834) (alterations in original)); *Hughes v. Moore*, 197 S.E.2d 214, 220 (Va. 1973) (recognizing the tort of negligent infliction of emotional distress where the plaintiff witnessed a vehicle nearly crash into her and immediately suffered emotional distress which resulted in physical symptoms).

Taking the well-pleaded allegations as true and viewing the Complaint in the light most favorable to Lucas, *Mylan Labs., Inc.*, 7 F.3d at 1134, the Court finds that Lucas's Complaint insufficiently states a claim for negligent infliction of emotional distress. Accordingly, the Court RECOMMENDS that Defendants' Amended Rule 12(b)(6) Motion to Dismiss be GRANTED to the extent it seeks dismissal of Count 8.

### 4.    **Count 9: Abuse of Process**

In Count 9, Lucas alleges that Defendants engaged in abuse of process by misusing the school's grievance process, taxpayers' monies, and the legal process. Specifically, Lucas contends three instances of abuse of process:  (1) Defendants "exploited the [school] district's grievance process . . . to carry out their own retaliatory actions against Lucas;" (2) Defendants "abused state and federal policies by intentionally refusing to report repeated suspicions of child abuse and neglect regarding Kim Arcell Taylor;" and, (3) Defendants, in an investigation conducted by the United States Department of Education's Office of Civil Rights, "fabricated and falsified statements as it relates to disciplinary actions taken against Kim Taylor in an effort to avoid being found guilty of discriminatory and retaliatory practices toward Lucas." (Compl. ¶¶ 56-57.)

While Defendants argue that Virginia's two-year statute of limitations for personal injury actions applies to Lucas's abuse of process claim, it appears to the Court that the two-year statute

28

of limitations under Virginia Code § 8.01-248 applies instead. *See* Reviser's Note to Va. Code § 8.01-248 ("Section 8.01-248 is a catch-all provision for actions not otherwise covered by a statute of limitation; e.g., malicious prosecution and abuse of process."). Regardless, a two-year statute of limitations applies.

To the extent the abuse of the school's grievance process and the failure to report Taylor serves as the basis of Count 9, Lucas's claim accrued in April or May of 2008. (*See* Compl. ¶¶ 22, 31, 66.) Because Lucas did not file her Complaint until January 4, 2011, the two-year statute of limitations bars Count 9 to the extent it relies on those instances of abuse.

However, to the extent Count 9 arises from an abuse of process during an investigation by the Office of Civil Rights, it is unclear whether the statute of limitations serves as a bar. Lucas's Complaint references investigations by the Office of Civil Rights ranging from 2007 through 2010. (Compl. ¶¶ 24, 66-67.) The two-year statute of limitations would only bar a claim for abuse of process accruing before January 4, 2009. Defendants have thus not met their burden in demonstrating that the statute of limitations bars Count 9 in its entirety.[18]

Accordingly, it is RECOMMENDED that the Court find the statute of limitations bars Count 9 to the extent that it alleges an abuse of process which accrued before January 4, 2009.

### C. Qualified Immunity

In Count 2, Lucas contends that Morton and two school board members violated Lucas's right to privacy and confidentiality by sharing information about her employment status with unauthorized persons, in violation of 42 U.S.C. § 1983. Section 1983 provides a private right of action for deprivation of constitutional rights by persons acting under the color of law.

---

[18] During oral argument, Defendants conceded this point.

29

Section 1983, therefore, "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Hence, to establish liability under Section 1983, a plaintiff must show that the defendant, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury.

*Brown v. Mitchell*, 308 F. Supp. 2d 682, 692 (E.D. Va. 2004) (*quoting Westmoreland v. Brown*,

883 F. Supp. 67, 71 (E.D. Va. 1995)) (internal citations omitted). Lucas specifically alleges:

(1) two school board members "illegally discussed confidential and sensitive information

regarding Lucas'[s] employment status with the president . . . and members of [t]he Henrico

County Democratic Committee during a[n] organizational event;" (2) one school board member

"shared confidential information with a local pastor regarding Lucas'[s] employment status;"

and, (3) "Morton disclosed confidential information regarding Lucas'[s] employment status to a

superintendent within another district via email, in addition to publicly disclosing Lucas'[s]

confidential employment status during a monthly school board meeting . . . ." (Compl. ¶ 39.)

Lucas broadly asserts that information regarding employment status falls under a

constitutionally-protected right to privacy but fails to allege with any specificity the

particularized right that Defendants allegedly violated.[19] Defendants, however, assert the

_____

[19] In her Complaint, Lucas alleges that the information shared was "confidential" and "sensitive." (Compl. ¶ 39.) Rather than factual allegations, these assertions as to the confidentiality and sensitivity of the information disclosed "are no more than conclusions" and "are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950. Lucas's Complaint fails to describe the nature of the information disclosed aside from the allegation that it related to her "employment status." (Compl. ¶ 39.) Likewise, the Complaint does not include a time frame in which these disclosures occurred. It is thus unclear whether the disclosures relate to Lucas's transfer/demotion, suspension, contract non-renewal, or some other matter.

During oral argument, Lucas stated that Defendants disclosed information about her being terminated for insubordination. Lucas, however, failed to include that information in her Complaint, and even her belated clarification during argument omits necessary allegations about the timing of any alleged disclosure.

30

affirmative defense of qualified immunity as to Lucas's § 1983 claim. To the extent Lucas sufficiently alleges with specificity any constitutional right to the non-disclosure of information regarding her employment status, this Court cannot find that the right at issue was clearly established at the time of Defendants' alleged misconduct. It is thus RECOMMENDED that the Court find Defendants entitled to qualified immunity from suit on this claim and DISMISS Count 2.

### 1. **Applicable Law**

The doctrine of qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Qualified immunity shields government officials performing discretionary functions from liability for civil damages, insofar as their conduct does not violate clearly established rights of which a reasonable person would have known, in order to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests–the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). It is an immunity from suit rather than a mere defense to liability. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). "[Q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (*quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986)). It ensures that "officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

31

Whether a government official is entitled to qualified immunity requires a two-part

analysis:

> First, a court must decide whether the facts that a plaintiff has alleged or shown make
> out a violation of a constitutional right. Second, if the plaintiff has satisfied this first
> step, the court must decide whether the right at issue was "clearly established" at the
> time of defendant's alleged misconduct. Qualified immunity is applicable unless the
> official's conduct violated a clearly established constitutional right.

*Pearson*, 555 U.S. at 232 (internal citations omitted). While the sequence set forth above is often

appropriate, it is not mandatory. *Id.* at 236. Thus, courts may "exercise their sound discretion in

deciding which of the two prongs of the qualified immunity analysis should be addressed first in

light of the circumstances in the particular case at hand." *Id.*

In assessing whether the rights allegedly violated were clearly established at the time of

the government official's conduct, "the right the official is alleged to have violated must have

been 'clearly established' in a more particularized, and hence more relevant, sense: The contours

of the right must be sufficiently clear that a reasonable official would understand that what he is

doing violates that right." *Anderson*, 483 U.S. at 640. Even if no prior decision addresses the

precise conduct at issue, a right can be deemed clearly established if "its illegality would have

been evident to a reasonable [official] based on existing caselaw." *Rogers v. Pendleton*, 249

F.3d 279, 285-86 (4th Cir. 2001). In making this determination, the Court "may rely upon cases

of controlling authority in the jurisdiction in question, or a 'consensus of cases of persuasive

authority such that a reasonable [official] could not have believed that his actions were lawful.'"

*Id.* at 287 (*quoting Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

### 2.    Defendants Are Entitled to Qualified Immunity From Suit on Count 2

Here, the Court must determine whether it was clearly established at the time of Defendants' conduct that disclosure of a public employee's employment status violates a constitutional right to privacy.  Assuming, without deciding, that Lucas could establish a violation of a constitutionally protected right, the alleged unlawful conduct in this case is at best a "gray area[]." *Maciariello*, 973 F.2d at 298.  Because the contours of the right at issue were not sufficiently clear such that a reasonable official in Defendants' position would have understood that what they were doing violated that right, Defendants are entitled to qualified immunity.

The Supreme Court of the United States has recently declined to decide whether the Constitution recognizes a right to informational privacy. *NASA v. Nelson*, 131 S. Ct. 746, 751 (2011); *see also id.* at 764 (concurrence in which two justices opined that a federal constitutional right to informational privacy did not exist).  Thus, while past Supreme Court decisions have referred to a constitutional right to privacy, the parameters of this right and whether such right truly exists remain unclear. *See Whalen v. Roe*, 429 U.S. 589, 599 (1977); *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 457 (1977).

When a constitutional right to privacy exists, it "extends to two types of interests: 'one is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions.'" *Walls v. City of Petersburg*, 895 F.2d 188, 192 (4th Cir. 1990) (*quoting Whalen*, 429 U.S. at 599-600).  The Fourth Circuit has stated that "there is no general constitutional right to privacy; rather, the 'right to privacy' has been limited to matters of reproduction, contraception, abortion, and marriage." *Edwards v. City of Goldsboro*, 178 F.3d 231, 252 (4th Cir. 1999); *see also Walls*, 895 F.2d at 192.

33

"[T]he first step in determining whether the information sought is entitled to privacy protection" is to determine "whether [the information] is within an individual's reasonable expectations of confidentiality. The more intimate or personal the information, the more justified is the expectation that it will not be subject to public scrutiny." *Walls*, 895 F.2d at 192. Even if information is determined to be entitled to privacy protection, the right to privacy is not absolute. *Id.* For example, a right to privacy may be outweighed by compelling governmental interests in disclosure. *Id.*

Lucas, a former teacher at a public school, contends that Defendants violated her constitutional right to privacy by disclosing information regarding her employment status. To the extent that the information disclosed relates to her suspension or contract non-renewal, the Court first notes that Lucas's Complaint indicates a public school board hearing was held on these issues. If information is made public or freely available in public records, such information cannot be deemed entitled to privacy protection. *Id.* at 193. At oral argument, Lucas contended some information disclosed was discussed during a closed school board meeting. Even taking into account this contradicting oral argument, no cases or other law clearly establish that the employment status of a teacher at a public school correlates to other categories of intimate, personal information deemed subject to privacy protection, such as "matters of reproduction, contraception, abortion, and marriage." *Edwards*, 178 F.3d at 252.

Lucas's claim to a constitutional right of privacy in her employment status is dubious, and even assuming such a right existed, it was not clearly established at the time of Defendants' challenged conduct. It is thus RECOMMENDED that the Court DISMISS Count 2 based on a finding that Defendants are entitled to qualified immunity.

34

**D.** **Count 1 May Proceed Only Against Defendant Henrico County School Board**

As discussed earlier, Lucas contends in Count 1 that Defendants retaliated against her after she voiced concerns about their treatment of children and families with disabilities, in violation of Section 504 of the Rehabilitation Act and Title V of the ADA. Defendants argue that Count 1 may not proceed against the individual defendants, in either their official or individual capacities.

The ADA and Section 504 of the Rehabilitation Act do "not permit actions against individual defendants who do not qualify as 'employers' under Title VII." *Simchick v. Fairfax Cnty. Sch. Bd.*, No. 1:05cv1476, 2006 WL 721372, at * 3 (E.D. Va. Mar. 20, 2006) (*citing Baird v. Rose*, 192 F.3d 462, 471-72 (4th Cir. 1999); *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 420 (E.D. Va. 1999)). It is thus RECOMMENDED that the Court allow Count 1 to proceed only against Henrico County School Board and DISMISS Count 1 to the extent it alleges an action against the individual defendants, in either their official or individual capacities.[20]

## IV. Conclusion

For the foregoing reasons, the undersigned Magistrate Judge RECOMMENDS that Defendants' Amended Rule 12(b)(1) Motion to Dismiss and Amended Rule 12(b)(6) Motion to

---

[20] Defendants also argue that compensatory and punitive damages, as well as a jury trial, are unavailable for Lucas's ADA retaliation claim in Count 1. (Defs.' Mem. Supp. Am. Rule 12(b)(6) Mot. Dismiss 9.) While Defendants cite to an unpublished Fourth Circuit opinion to support this proposition, Defendants fail to address published district court cases in this circuit and other circuit court opinions which hold otherwise. Further, because Defendants did not construe Lucas's Complaint to invoke the Rehabilitation Act, Defendants have not taken a position on whether damages and a jury trial are available for Count 1 to the extent Lucas asserts a claim under the Rehabilitation Act. Based on the current state of briefing, the Court declines to address this issue. To the extent the issue must be addressed, the Court RECOMMENDS that the motion be DENIED WITHOUT PREJUDICE.

Dismiss be GRANTED IN PART and DENIED IN PART. (Docket Nos. 7 and 9.) Accordingly, it is RECOMMENDS that the Court issue the following orders:

1. Count 1 may proceed only against Defendant Henrico County School Board;

2. Count 2 is DISMISSED based on Defendants' entitlement to qualified immunity;

3. Count 3 is DISMISSED as barred by the applicable statute of limitations;

4. Count 4(a) is DISMISSED for lack of subject matter jurisdiction;

5. Count 4(b) is DISMISSED for lack of standing and as duplicative of Count 1;

6. Counts 5-8 are DISMISSED for failure to state a claim; and,

7. Count 9 may proceed to the extent it alleges an abuse of process accruing on or after January 4, 2009.

The parties are ADVISED that they may file specific written objections to the Report and Recommendation within fourteen (14) days of the date of entry hereof. Any document submitted must comply with the following directives:

1. Each objection must be clearly labeled and sequentially numbered. Each objection must be labeled with the corresponding heading from the Report and Recommendation.

2. Each paragraph must be sequentially numbered.

3. Each objection must cite with specificity, and include quotations to, the Report and Recommendation.

4. Each objection must clearly identify the legal or factual deficiency in the Report and Recommendation. Each objection must include legal or factual support for the claims therein.

Failure to file specific objections in a timely manner to the Report and Recommendation may result in the entry of an Order dismissing the Complaint. *See* Fed. R. Civ. P. 72(b). It may also preclude further review or appeal from such judgment. *See Wright v. Collins*, 766 F.2d 841, 845

(4th Cir. 1985) (noting the general rule that "a party who fails to object to a magistrate's report is barred from appealing the judgment of a district court adopting the magistrate's findings").

The Clerk is directed to send a copy of the Report and Recommendation to Lucas, to counsel of record, and to the Honorable Robert E. Payne.

_____/s/_____
M. Hannah Lauck
United States Magistrate Judge

Date: 8-25-11
Richmond, Virginia