IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

KANDISE LUCAS,

      Plaintiff,

v.                                      Civil Action No. 3:11cv5

HENRICO COUNTY SCHOOL BOARD, et al.,

      Defendants.

## REPORT AND RECOMMENDATION

This matter comes before the Court pursuant to 28 U.S.C. § 636(b)(1)(B) for a Report and Recommendation on Defendants' Rule 12(c) Motion for Judgment on the Pleadings ("Rule 12(c) Motion") (Docket No. 32) and Plaintiff Kandise Lucas's Motion to Amend Complaint (Docket No. 43). The motions have been fully briefed and are ripe for disposition. On January 6, 2012, the Court heard oral argument on Defendants' Rule 12(c) Motion.[1] The Court has determined that oral argument on Lucas's Motion to Amend Complaint would not aid the decisional process. For the reasons that follow, the undersigned Magistrate Judge RECOMMENDS that Defendants' Rule 12(c) Motion be GRANTED and that Lucas's Motion to Amend Complaint be DENIED WITHOUT PREJUDICE.

## I. Factual and Procedural Background

A motion for judgment on the pleadings filed pursuant to Federal Rule of Civil Procedure 12(c) utilizes the same standard as a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6). *Independence News, Inc. v. City of Charlotte*, 568 F.3d 148, 154 (4th Cir. 2009). Thus, in considering Lucas's Complaint for purposes of Defendants' Rule 12(c) Motion,

---

[1] Because the Court heard oral argument on this motion, the Court RECOMMENDS that the pending Motion for Hearing filed by Lucas be DENIED AS MOOT. (Docket No. 41.)

the Court views the facts in the light most favorable to Lucas but reserves its own judgment as to any legal conclusions or unwarranted inferences. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The Court recites only those facts necessary for the resolution of Defendants' Rule 12(c) Motion.[2]

### A.   Lucas's Employment with Henrico County Public Schools

On January 4, 2011, Lucas, formerly employed by Henrico County Public Schools, filed a Complaint in this Court against Defendants Henrico County School Board, Patrick Russo, Andrew Armstrong, Philip Jepson, Marilyn Royal, Fred S. Morton, and John Rokenbrod.[3]

Starting in August 2005, Lucas worked at John Rolfe Middle School as a special education teacher, case manager, and new teacher mentor. (Compl. ¶ 16.) Lucas alleges that Kim Arcell Taylor, a fellow teacher at John Rolfe Middle School, physically and verbally abused students with special needs. (Compl. ¶ 22.) For two years, Lucas, along with other staff and parents, "reported [Taylor's] abusive and neglectful actions" to Armstrong, Royal, Jepson, and Morton, as well as to members of the Henrico County School Board. (Compl. ¶ 22.) Defendants disregarded her reports and "repeatedly instructed [her] to refrain from documenting and reporting" Taylor's abuse. (Compl. ¶ 22.) Defendants did not take action against Taylor until April 2008, when he reportedly came to work under the influence of alcohol. (Compl. ¶ 22.)

---

[2] Although Lucas's Complaint asserts ten counts against Defendants, the Court previously granted in part Defendants' motions to dismiss, dismissing all but two claims. (Aug. 25, 2011 Report & Recommendation, *adopted by* Sept. 30, 2011 Order.) (Docket Nos. 30, 31.) The Court will recite only those facts necessary for the disposition of Defendants' Rule 12(c) Motion as applied to the two remaining claims.

[3] Russo serves as the superintendent of Henrico County Public Schools, Armstrong serves as Principal of John Rolfe Middle School, and Jepson serves as Director of Human Resources for Henrico County Public Schools. (Compl. ¶¶ 7-9.) Royal formerly served as Director of Middle Schools for Henrico County Public Schools, Morton formerly served as Superintendent of Henrico County Public Schools, and Rokenbrod formerly served as Assistant Principal at John Rolfe Middle School. (Compl. ¶¶ 10-12.)

2

Lucas claims that Taylor received preferential treatment due to his personal connections with Royal, that school officials allowed Taylor to resign prior to taking disciplinary action against him, and that Defendants failed to report Taylor's abuse to the appropriate administrative agencies. (Compl. ¶ 22.)

Throughout her tenure at Henrico County Public Schools, Lucas documented and reported numerous special education violations within John Rolfe Middle School relating to children with special needs. (Compl. ¶ 23.) Starting in November 2007, Armstrong, Royal, Jepson, and Morton repeatedly instructed Lucas to refrain from documenting and reporting incidents of abuse and neglect by district employees toward students within John Rolfe Middle School. (Compl. ¶ 20.) Armstrong instructed Lucas to report any such incidents verbally and prohibited her from documenting the incidents via e-mail. (Compl. ¶ 20.)

Lucas "received numerous written and verbal threats" in response to her reporting activities. (Compl. ¶ 24.) In October 2007, Rokenbrod sent an e-mail to John Rolfe Middle School administrators referencing Lucas and advising the administrators to "'do whatever needs to be done in order to get rid of her so that [they] are not stuck with her next year.'" (Compl. ¶ 26.) In November 2007, two individuals placed messages in her school mailbox stating, "'YOUR [sic] FIRED MS. LUCAS.'" (Compl. ¶ 25.) Lucas reported the incident to school board members and to Morton, Royal, and Jepson, but no investigation resulted. (Compl. ¶ 25.) Lucas contends on information and belief that the messages were left "at the direction of Henrico's administration in an effort to intimidate Lucas into resigning." (Compl. ¶ 25.) In April 2008, Morton sent Lucas a threatening letter "to discourage Lucas from testifying before the Office of Civil Rights" regarding a complaint against the district. (Compl. ¶ 24.)

In February 2008, Morton transferred Lucas from John Rolfe Middle School to Elko Middle School, demoting her to serve as an assistant to two science instructors. (Compl. ¶ 16.) Armstrong and Jepson informed Lucas of the transfer, advising her it was the result of her unprofessional conduct. (Compl. ¶ 16.) Lucas contends the transfer violated the district's disciplinary guidelines and occurred within the same week she received a superior written evaluation. (Compl. ¶ 16.)

Despite the transfer, Lucas continued to report "suspected and actual incidents of abuse and neglect . . . as they relate to students with disabilities . . . at John Rolfe Middle School." (Compl. ¶ 27.) In response to her continued reporting activities, Morton advised her in February 2008 that he would be recommending the non-renewal of her teaching contract. (Compl. ¶ 27.) Lucas challenged this recommendation through the district's grievance process, and in April 2008, Morton agreed to withdraw his recommendation. (Compl. ¶ 27.)

Thereafter she continued her reporting activities and, in May 2008, Morton "had a letter hand-delivered to Lucas while she was at Elko Middle School in which he issued a directive that stated, 'you are not permitted to write or send any e[-]mails without my permission during school hours.'" (Compl. ¶ 28.) In response, Lucas sent Morton an e-mail requesting clarification and the legal grounds for his directive. (Compl. ¶ 29.) Morton responded with another hand-delivered letter "advising Lucas that should she e[-]mail him again without seeking permission first, during work hours, she would face disciplinary action, which would include the possibility of termination." (Compl. ¶ 29.) Lucas again e-mailed Morton, requesting clarification and the legal grounds for his directive. (Compl. ¶ 29.)

On May 5, 2008, Morton suspended Lucas for sixty days with pay and advised Lucas that he would be recommending her for contract non-renewal because she neglected her duties,

engaged in insubordinate conduct, posed a threat to her students, and interfered with the daily

operations of the school district. (Compl. ¶ 30.) On May 30, 2008, the school board held a

public hearing and upheld Morton's "recommendation for contract non[-]renewal based on the

grounds of insubordination, posing a threat to students, and interfering with the daily operations

of the school district, as well as preventing [Morton] from carrying out his daily job duties."

(Compl. ¶ 31.) Lucas alleges that the school board upheld Morton's recommendation to retaliate

against Lucas for her reporting activities. (Compl. ¶ 31.) On June 30, 2008, Lucas's

employment with Henrico County Public Schools terminated. (Compl. ¶ 3.)

**B.     Summary of Remaining Claims**

   After granting in part previous motions to dismiss filed by Defendants, only two claims

remain in Lucas's Complaint. *See supra* n.2. The Court restates these two claims as follows:

Count 1:    Henrico County Public Schools conspired to retaliate against Lucas for
reporting the abuse and neglect towards students with special needs, in
violation of Section 504 of the Rehabilitation Act of 1973[4] and Title V of
the Americans with Disabilities Act of 1990 ("ADA");[5] and,

---

[4] Section 504 of the Rehabilitation Act provides in relevant part: "No otherwise qualified
individual with a disability in the United States . . . shall, solely by reason of her or his disability,
be excluded from the participation in, be denied the benefits of, or be subjected to discrimination
under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).
The Rehabilitation Act incorporates the anti-retaliation provision in Title VI of the Civil Rights
Act, 42 U.S.C. § 2000d *et seq.  See* 29 U.S.C. § 794a(a)(2); 34 C.F.R. § 100.7(e).

[5] 42 U.S.C. § 12201 *et seq.*  Title V of the ADA contains a provision prohibiting
retaliation and coercion:

    (a) Retaliation

    No person shall discriminate against any individual because such individual
has opposed any act or practice made unlawful by [the ADA] or because such
individual made a charge, testified, assisted, or participated in any manner in
an investigation, proceeding, or hearing under this chapter.

    (b) Interference, coercion, or intimidation

Count 9:        Defendants engaged in abuse of process by misusing the legal process to
                accomplish a purpose for which it was not designated.[6]

On October 3, 2011, Defendants filed their Rule 12(c) Motion.[7]  Defendants argue that

the applicable statute of limitations bars Count 1 and that Lucas fails to state a cause of action for

abuse of process in Count 9. (Defs.' R. 12(c) Mot. J. Pleadings 1.)

### II.  Standard of Review

A motion for judgment on the pleadings under Rule 12(c) utilizes the same standard as a

motion made pursuant to Rule 12(b)(6). *Independence News, Inc.*, 568 F.3d at 154; *Burbach*

*Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002); *Edwards v. City*

*of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  Thus, a motion for judgment on the pleadings

"tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the

facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*,

980 F.2d 943, 952 (4th Cir. 1992).  In considering a motion for judgment on the pleadings, a

plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most

---

It shall be unlawful to coerce, intimidate, threaten, or interfere with any
individual in the exercise or enjoyment of, or on account of his or her having
exercised or enjoyed, or on account of his or her having aided or encouraged
any other individual in the exercise or enjoyment of, any right granted or
protected by this chapter.

*Id.* § 12203. Lucas bases her retaliation claim on alleged acts and practices made unlawful by
Title II of the ADA. (*See* Compl. at 24.) Title II provides in relevant part: "Subject to the
provisions of this subchapter, no qualified individual with a disability shall, by reason of such
disability, be excluded from participation in or be denied the benefits of the services, programs,
or activities of a public entity, or be subjected to discrimination by any such entity." *Id.* § 12132.

[6] Pursuant to the Court's previous order on Defendants' motions to dismiss, Count 9 is
only cognizable to the extent it alleges an abuse of process accruing on or after January 4, 2009.
(Aug. 25, 2011 Report & Recommendation 29, *adopted by* Sept. 30, 2011 Order.)

[7] Defendants included proper *Roseboro* notice in their motion, advising Lucas of the
necessity of filing a proper response. *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

favorable to the plaintiff. *Mylan Labs., Inc.*, 7 F.3d at 1134; *see also Martin*, 980 F.2d at 952. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949.

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (*citing Bell Atl. Corp.*, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (*citing Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

Although a Rule 12(c) motion "invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996) (*citing Richmond, Fredericksburg & Potomac R.R. Co. v. Frost*, 4 F.3d 244, 250 (4th Cir.

1993)). Thus, a Rule 12(c) motion may seek dismissal based on an applicable statute of limitations in certain circumstances.

### III.  Analysis

A.   **Count 1**

1.   **The Applicable Statute of Limitations Bars Count 1**

Because the Rehabilitation Act and the ADA do not explicitly provide their own statute of limitations, district courts must borrow the most appropriate statute of limitations from the state in which the district court sits. *A Society Without a Name v. Virginia*, 655 F.3d 342, 347 (4th Cir. 2011) (hereinafter "*ASWAN*"); *Wolsky v. Med. Coll. of Hampton Rds.*, 1 F.3d 222, 223-24 (4th Cir. 1993). Because the Virginia Rights of Persons with Disabilities Act[8] was modeled after and is almost identical to the Rehabilitation Act and the ADA, district courts in Virginia must apply the Virginia Act's one-year statute of limitations to claims brought under the Rehabilitation Act or the ADA. *ASWAN*, 655 F.3d at 348; *Wolsky*, 1 F.3d at 224-25; *Perry v. Computer Scis. Corp.*, No. 1:10cv175, 2010 WL 3784900, at *5 (E.D. Va. Sept. 21, 2010), *aff'd*, 429 F. App'x 218 (4th Cir. 2011). Lucas thus must have brought her Rehabilitation Act and ADA claim within one year from when the claim accrued. Federal law controls the determination of when the claim accrued. *ASWAN*, 655 F.3d at 348 (*citing Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975)). "A civil rights claim accrues when the plaintiff 'knows or has reason to know of the injury which is the basis of the action.'" *Id.* (*quoting Cox*, 529 F.2d at 50).

In Count 1, Lucas states that "Henrico County Public Schools, under the leadership of former Superintendent Morton, conspired to retaliate against Lucas for voicing the illegal, unethical, and immoral manner in which students and families with special needs were being treated." (Compl. ¶ 38.) Her Complaint alleges that, in response to her reporting activities, the

---

[8] Va. Code § 51.5-40 *et seq.*

Henrico County School Board retaliated against her by taking various actions, beginning with issuing written and verbal threats and culminating in the non-renewal of Lucas's teaching contract on June 30, 2008. (Compl. ¶¶ 3, 16, 24-26, 30-31.)[9] Lucas's Rehabilitation Act and ADA claim in Count 1 thus accrued at the latest on June 30, 2008 when her employment with Henrico County Public Schools terminated. (*See* Compl. ¶ 3 ("[Lucas] brings this action resulting from damages incurred due to her for unlawful non[-]renewal of her teaching contract from the Henrico County School System on or about June 30, 2008.").) Because Lucas did not file her Complaint until January 4, 2011, years beyond the one-year time period in which her claim accrued, the statute of limitations bars Count 1 unless Lucas can demonstrate an entitlement to tolling.[10]

---

[9] One paragraph in Lucas's Complaint appears to contain allegations of retaliatory actions occurring at some point subsequent to her termination. (*See* Compl. ¶ 34.) Lucas alleges that between September 2009 and October 2010 she met with Russo on different occasions "in an effort to collaborate on ways to improve the education of students and families" and "to resolve parent and student complaints against school employees." (Compl. ¶ 33.) Lucas alleges that Armstrong and a member of the Henrico County School Board retaliated against her "for advocating for students and families with disabilities" by "encouraging Russo to stop meeting and working with Lucas." (Compl. ¶ 34.) Even liberally construing Lucas's Complaint, taking the well-pleaded allegations as true, and viewing them in the light most favorable to Lucas, these allegations fail to state a claim for a later instance of retaliation.

To state a prima facie case of retaliation, Lucas must sufficiently allege that: (1) she engaged in protected activity; (2) Henrico County School Board took action that would be materially adverse to a reasonable employee or job applicant; and, (3) a causal connection between the protected activity and the asserted adverse action exists. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007). Lucas's allegations in the 2009 and 2010 time frame fail to state an adverse action and fail to plausibly create an inference of causation between any adverse action and protected activity. *Adkins v. Fairfax Cnty. Sch. Bd.*, No. 1:08cv91, 2008 WL 2076654, at *6 (E.D. Va. May 15, 2008); *see also Lewis v. Potter*, No. DKC 2008-2249, 2009 WL 2168969, at *6-7 (D. Md. July 17, 2009). Thus, even if these allegations of retaliation are not barred by the statute of limitations, they fail to state a claim for relief.

[10] In her Response and Memorandum in Opposition to Defendants' Rule 12(c) Motion, Lucas frequently asserts new factual allegations and/or additional claims which she did not properly raise in her Complaint. (*See, e.g.*, Pl.'s Resp. Defs.' R. 12(c) Mot. J. Pleadings ("Pl.'s

## 2.    Lucas Has Not Demonstrated an Entitlement to Tolling

When district courts must borrow and apply a state statute of limitations to federal

constitutional claims, they must also apply the state's rules for tolling that statute of limitations.

*Scoggins v. Douglas*, 760 F.2d 535, 537 (4th Cir. 1985) (*citing Bd. of Regents v. Tomanio*, 446

U.S. 478, 484-86 (1980)); *see also Wade v. Danek Med., Inc.*, 182 F.3d 281, 289 (4th Cir. 1999).

Lucas argues that Defendants' fraudulent concealment tolls the statute of limitations pursuant to

Virginia Code § 8.01-229(D).[11]  Specifically, Lucas asserts that Defendants engaged in

fraudulent concealment by: (1) disregarding procedures for mandated reporting and violating

mandates to report allegations of child abuse to proper authorities (Pl.'s Resp. ¶ 2; Pl.'s Mem.

Opp'n 2-3, 5-7); and, (2) agreeing not to report Taylor's abuse and neglect of students with

special needs and not to seek the revocation of his teaching license (Pl.'s Mem. Opp'n 4-5, 9).

---

Resp.") ¶¶ 6-7; Pl.'s Mem. Opp'n Defs.' R. 12(c) Mot. J. Pleadings ("Pl.'s Mem. Opp'n") 7-8, 10, 17.) For example, Lucas asserts that Defendants have continued to retaliate against her by banning her from school district property, intimidating, threatening, and being verbally abusive toward her, and falsifying documentation regarding her attendance, words, and actions during individualized education meetings. (Pl.'s Resp. ¶¶ 6-7.) The Court declines to consider these new allegations in addressing Defendants' Rule 12(c) Motion because they are not properly before the Court. *See Equity in Athletics, Inc. v. Dep't of Educ.*, 504 F. Supp. 2d 88, 111 (W.D. Va. 2007) (citing cases for the proposition that "new legal theories must be added by way of amended pleadings, not by arguments asserted in legal briefs").

The Court notes that Lucas has now filed a Motion to Amend Complaint, which the Court will address separately below.

[11] This statute provides:

Obstruction of filing by defendant.—When the filing of an action is obstructed by a defendant's . . . using any other direct or indirect means to obstruct the filing of

an action, then the time that such obstruction has continued shall not be counted as any part of the period within which the action must be brought.

Va. Code § 8.01-229(D).

Lucas states that, although she had suspected Defendants' engagement in fraudulent concealment since 2007, she did not have documented evidence of such until December 2010. (Pl.'s Mem. Opp'n 16.)

Virginia Code § 8.01-229(D) tolls the statute of limitations during the time in which a defendant uses any direct or indirect means to obstruct the filing of an action. However, "[a] statute of limitations will only be tolled for obstruction when the defendant engages in fraudulent behavior . . . ." *Daniels v. Ga.-Pac. Corp.*, No. 97-2670, 1998 WL 539474, at *4 (4th Cir. Aug. 25, 1998) (*citing Horn v. Abernathy*, 343 S.E.2d 318, 321 (Va. 1986)). "'The character of fraud necessary to toll the statute must be of a variety involving moral turpitude. A defendant must intend to conceal the discovery of the cause of action by trick or artifice and must have thus actually concealed it from the plaintiff in order for the exception to apply.'" *Horn*, 343 S.E.2d at 321 (*quoting Richmond Redev. & Hous. Auth. v. Laburnum Constr. Corp.*, 80 S.E.2d 574, 582 (Va. 1954)); *see also Resolution Trust Corp. v. Walde*, 856 F. Supp. 281, 286 (E.D. Va. 1994) (*quoting FDIC v. Cocke*, 7 F.3d 396, 402 (4th Cir. 1993)). "Mere silence by the person liable is not concealment, but there must be some affirmative act or representation designed to prevent, and which does prevent, the discovery of the cause of action." *Newman v. Walker*, 618 S.E.2d 336, 338 (Va. 2005). Thus, under Virginia law, the party seeking to toll the statute of limitations must establish "both an 'affirmative act of misrepresentation' and an act 'designed or intended, directly or indirectly, to obstruct.'" *Trident-Brambleton, L.L.C. v. PPR No. 1, L.L.C*, No. 1:05cv1423, 2006 WL 1880986, at *3 (E.D. Va. July 5, 2006) (*quoting Newman*, 618 S.E.2d at 340); *Mid-Atl. Bus. Commc'ns, Inc. v. Va. Dep't of Motor Vehicles*, 606 S.E.2d 835, 839 (Va. 2005).

Even if the Court were to assume Lucas's arguments to be true, they fail to demonstrate an affirmative act undertaken by Defendants to conceal or prevent her from discovering the grounds which gave rise to her retaliation claim. Indeed, the allegations contained in Lucas's Complaint undercut her assertion of fraudulent concealment. Lucas's Complaint alleges that: (1) she documented and reported instances of special education violations, including physical and verbal abuse of students with special needs (Compl. ¶¶ 22, 23); (2) Defendants failed to act on her reports and instructed her to refrain from her documenting and reporting activities (Compl. ¶¶ 20, 22); and, (3) in response to her continued reporting activities, Defendants made threats toward her, transferred her to another school, demoted her to assistant, and eventually terminated her employment (Compl. ¶¶ 16, 24-27, 30-31). On the face of her Complaint, Lucas makes evident that in 2008 she knew or had reason to know of the factual underpinnings which serve as the basis of the retaliation claim she did not file until 2011.

Any claim that she required "proof" before filing cannot serve as a basis to toll the statute of limitations. Lucas's later discovery of a confidential settlement with a non-party employee, which Lucas claims confirms her suspicions, also does not provide a basis to toll. To the extent Lucas contends this settlement confirms her 2008 reports of abuse, it also confirms she knew of the facts underpinning her retaliation claim in 2008 as well. Lucas has failed to demonstrate how Defendants' alleged disregard of reporting requirements and attempt to cover-up instances of abuse and neglect concealed or prevented her from discovering the basis of her retaliation claim. Thus, Lucas has failed to show an entitlement to tolling under Virginia Code § 8.01-229(D), and the Court RECOMMENDS the dismissal of Count 1 as barred by the statute of limitations.

**B.**     **Count 9 Fails to State a Claim for Abuse of Process Under Virginia Law**

In Count 9, Lucas alleges that Defendants engaged in an abuse of process during an

investigation conducted by the United States Department of Education's Office of Civil Rights.

(Compl. ¶ 57.)[12] Specifically, Lucas states:

> [D]uring an investigation conducted by The United States Department of
> Education's Office of Civil Rights, the Defendants fabricated and falsified
> statements as it relates to disciplinary actions taken against Kim Taylor in an
> effort to avoid being found guilty of discriminatory and retaliatory practices
> toward Lucas. The Defendants willful[ly] and maliciously conspired to exploit[]
> and abuse[] the investigative process in order to mislead the investigators of this
> federal government agency as documented by court transcripts . . . .

(Compl. ¶ 57; *see also* Pl.'s Mem. Opp'n 12-14.)

To state a claim for abuse of process under Virginia law, a plaintiff must sufficiently

allege: "(1) the existence of an ulterior purpose; and (2) an act in the use of the process not

proper in the regular prosecution of the proceedings." *Donohoe Constr. Co., Inc. v. Mount*

*Vernon Assocs.*, 369 S.E.2d 857, 862 (Va. 1988). Importantly, "[a]buse of process involves the

wrongful *use* of process *after* it has been issued." *Triangle Auto Auction, Inc. v. Cash*, 380

S.E.2d 649, 650 (Va. 1989); *see also Vuyyuru v. Jadhav*, 3:10cv173, 2011 WL 1483725, at *13

(E.D. Va. Apr. 19, 2011) ("A plaintiff must be served with some form of process—such as a

summons, writ, subpoena, or notice of deposition—in order to claim the process was abused."

(*citing Donohoe Constr. Co., Inc.*, 369 S.E.2d at 862-63; *Mullins v. Sanders*, 54 S.E.2d 116, 121-

22 (Va. 1949))).

---

[12] Lucas also asserts that Defendants engaged in an abuse of process by exploiting the
district's grievance process and by failing to report Taylor for suspicions of child abuse and
neglect. (Compl. ¶ 56.) The Court previously found these instances of abuse of process to be
barred by the applicable statute of limitations. (Aug. 25, 2011 Report & Recommendation 29,
*adopted by* Sept. 30, 2011 Order.) Therefore, the Court declines to address Lucas's reasserted
arguments regarding abuse of the grievance process. (*See* Pl.'s Mem. Opp'n 13-14.)

For instance, in *Mullins*, the Supreme Court of Virginia found sufficient evidence of an abuse of process claim to create a jury question. 54 S.E.2d at 122. The evidence showed that the defendant, Sanders, instigated the arrest of the plaintiff, Mullins, for passing a check by improper signature with the intent to defraud Sanders. *Id.* at 118. Sanders then repeatedly told Mullins to pay a debt owed to Sanders or be sent to jail. *Id.* at 118-19. The court stated: "[U]nder this evidence, the jury would have had the right to say that in instigating the arrest of [Mullins], [Sanders] was prompted by an 'ulterior motive,' namely, to collect the debt due him rather than to punish [Mullins] for his supposed violation of the criminal law." *Id.* at 122. The jury could also find that Sanders improperly used the criminal process as a "whip to force the payment of an alleged indebtedness." *Id.* (internal quotation omitted). Finding that the trial court erred in striking this evidence and entering judgment for Sanders, the court reversed and remanded the case for a new trial. *Id.*

Even assuming Lucas has sufficiently alleged the existence of an ulterior purpose, her Complaint is devoid of any allegations that Defendants wrongfully *used* process *after* its issuance. Her allegations that Defendants falsified and fabricated statements made during an investigation conducted by the Office of Civil Rights insufficiently allege the second element of abuse of process. First, Lucas does not allege that Defendants issued or used process against her. *Vuyyuru*, 2011 WL 1483725, at *13 ("[A] plaintiff raising an abuse of process claim must allege a defendant served the plaintiff himself with process, or that a defendant filed a document with a court directed at the plaintiff, such as a lien or warrant."). Instead, Lucas alleges that the United States Department of Education's Office of Civil Rights initiated and conducted the investigation. (Compl. ¶ 57.) Second, falsified or fabricated statements do not sufficiently constitute an abuse of process under Virginia law. *See, e.g., Vuyyuru*, 2011 WL 1483725, at *13

14

(holding that the plaintiff failed to state a claim for abuse of process by alleging that the

defendants gave perjured testimony at proceedings before the Virginia Board of Medicine for

purposes of retaliation); *Montgomery v. McDaniel*, 628 S.E.2d 529, 533 (Va. 2006) (stating that

while withholding documents during litigation might be sanctionable conduct, such conduct does

not establish liability in an action for abuse of process); *Cash*, 380 S.E.2d at 651 (holding that the

plaintiff failed to demonstrate the second element of abuse of process because the defendant

provided the prosecutor with incomplete information *before* the defendant swore out the warrants

and not *after* the issuance of process); *7600 Ltd. P'ship v. QuesTech, Inc.*, No. L148381, 1996

WL 34384553, at *2 (Va. Cir. Ct. May 22, 1996) (holding that misrepresentations to the Court

might constitute sanctionable conduct, but "do not fit within the definition of abuse of process in

Virginia"). Accordingly, the Court RECOMMENDS the dismissal of Count 9 for failure to state

a claim.

### IV. Lucas's Motion to Amend Complaint

On January 6, 2012, the day the Court heard oral argument on Defendants' Rule 12(c)

Motion, Lucas filed her Motion to Amend Complaint. Construing Lucas's motion liberally, it

appears Lucas seeks to supplement her pleading with new factual allegations and/or claims

against Defendants based on actions committed by Defendants after the filing of her initial

Complaint. Defendants oppose the motion.

Pursuant to Rule 15(d), "[o]n motion and reasonable notice, the court may, on just terms,

permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event

that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). "[T]he

standards used by a district court in ruling on a motion to amend [under Rule 15(a)] or on a

motion to supplement [under Rule 15(d)] are nearly identical. In either situation, leave should be

freely granted, and should be denied only where 'good reason exists . . . .'" *Franks v. Ross*, 313

F.3d 184, 198 n.15 (4th Cir. 2002) (*quoting Walker v. United Parcel Serv.*, 240 F.3d 1268, 1278

(10th Cir. 2001)).

The Supreme Court of the United States has held that amendments under Rule 15 should

be freely allowed in the absence of considerations such as undue delay, bad faith, repeated

failure to cure deficiencies, undue prejudice to the opposing party, or futility of the amendment.

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Equal Rights Ctr. v. Niles Bolton Assocs.*,

602 F.3d 597, 603 (4th Cir. 2010) ("A district court may deny a motion to amend when the

amendment would be prejudicial to the opposing party, the moving party has acted in bad faith,

or the amendment would be futile."); *Rowe v. U.S. Fid. & Guar. Co.*, 421 F.2d 937, 943-44 (4th

Cir. 1970) (discussing the same factors in considering a motion to supplement).  Further, delay

alone cannot sustain the denial of a motion seeking leave to amend, as long as such delay is not

accompanied by prejudice, bad faith, or futility. *Edwards v. City of Goldsboro*, 178 F.3d 231,

242 (4th Cir. 1999); *Smith v. Angelone*, 111 F.3d 1126, 1134 (4th Cir. 1997).

Here, Lucas did not attach a copy of her proposed supplemental complaint for the Court's

review.  Based on her motion alone, the Court cannot determine whether Lucas seeks to

supplement existing claims with new factual allegations or add entirely new, freestanding claims.

Upon review of this limited record, it appears that Lucas suggests, if anything, adding entirely

new claims altogether.  Given Lucas's failure to tender the proposed supplemental or separate

complaint along with her motion, the Court cannot properly analyze the request before it,

including whether any of the proposed supplementation would be futile or prejudicial to

Defendants.  *See Williams v. Wilkerson*, 90 F.R.D. 168, 169-70 (E.D. Va. 1981).  The Court will

therefore RECOMMEND that Lucas's Motion to Amend Complaint be DENIED WITHOUT PREJUDICE.

## V. Conclusion

For the foregoing reasons, the undersigned Magistrate Judge RECOMMENDS that Defendants' Rule 12(c) Motion (Docket No. 32) be GRANTED and that Lucas's Motion to Amend Complaint (Docket No. 43) be DENIED WITHOUT PREJUDICE. Accordingly, it is RECOMMENDED that the Court DISMISS Lucas's Complaint.

The parties are ADVISED that they may file specific written objections to the Report and Recommendation within fourteen (14) days of the date of entry hereof. Any document submitted must comply with the following directives:

1.  Each objection must be clearly labeled and sequentially numbered. Each objection must be labeled with the corresponding heading from the Report and Recommendation.

2.  Each paragraph must be sequentially numbered.

3.  Each objection must cite with specificity, and include quotations to, the Report and Recommendation.

4.  Each objection must clearly identify the legal or factual deficiency in the Report and Recommendation. Each objection must include legal or factual support for the claims therein.

Failure to file specific objections to the Report and Recommendation in a timely manner may result in the entry of an Order dismissing the Complaint. *See* Fed. R. Civ. P. 72(b). It may also preclude further review or appeal from such judgment. *See Wright v. Collins*, 766 F.2d 841, 845 (4th Cir. 1985) (noting the general rule that "a party who fails to object to a magistrate's report is barred from appealing the judgment of a district court adopting the magistrate's findings").

17

The Clerk is directed to send a copy of the Report and Recommendation to Lucas via

first-class mail, to counsel of record, and to the Honorable Robert E. Payne.

/s/

M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: 4-11-12